Allen M. TATMAN, Defendant Below,
Appellant,

v.

STATE of Delaware, Plaintiff Below,
Appellee.

Supreme Court of Delaware.

Dec. 7, 1973.

Arlen B. Mekler, Asst. Public Defender,
and Weston B. Wardell, Jr., Asst. Public
Defender, Wilmington, of counsel, for de-
fendant below, appellant.

Joseph A. Hurley and Jeffrey Weiner,
Deputy Attys. Gen., Wilmington, for plain-
tiff below, appellee.

Before HERRMANN, C. J., and CAREY
and DUFFY, JJ.

HERRMANN, Chief Justice:

The defendant raises two questions upon
this appeal from his conviction for having
sold a narcotic drug under 16 Del.C. § 4725.

I.

The first contention is that the Trial
Court erred in admitting into evidence the
heroin, allegedly sold by the defendant, be-
cause the chain of custody had not been
proved with sufficient certainty.

The heroin, packaged in 28 glassine bags,
was purchased from the defendant by Ron-
ald Massey. Massey in turn handed the
heroin over to State Trooper Corrigan who

was acting as an undercover agent. Corrigan testified that after he made the purchase he took the bags to the Drug Control Unit and performed tests which indicated that the contents of the bags was heroin. He then initialed and dated each bag, re-wrapped it, and placed it in a marked and sealed State Police envelope. The envelope was fortified with tape and placed in an evidence locker at the Drug Control Unit where it remained until trial. Later, at trial, Trooper Corrigan identified the envelope as the one which he had placed in the locker on the specified date.

The defendant contends that, because Massey could not positively identify the bags shown to him at trial, as the bags he allegedly handed to Trooper Corrigan, the chain of evidence had not been sufficiently established. We find no merit in this argument.

■ To be sure, the State is obliged to account for its careful custody of evidence from the moment the State is in receipt of the evidence until trial. The State need not, however, prove beyond all possibility of doubt the identity of the evidence or the improbability of tampering; it need only prove that there is a reasonable probability that no tampering has occurred. Clough v. State, Del.Super., 295 A.2d 729 (1972).

We find that the *Clough* test has been met in this case. Thus, the integrity of the chain of possession was a matter of weight, rather than admissibility, and was properly a matter for the jury.

## II.

The defendant also contends that the Trial Court erred in denying the defendant's motion to grant immunity under 11 Del.C. § 3508 to a witness, Patricia Browning, who claimed that she could exonerate the defendant. Patricia Browning had allegedly been present during the sale of the heroin and allegedly wished to testify that she, not the defendant, sold the heroin. She would not, however, allow herself to be interviewed by the Attorney General nor would she testify at trial without first having been granted witness immunity.[1] Under the circumstances, the Attorney General declined to interview Browning.

■ The defendant's argument on this issue has two prongs: First, it is argued that the Witness Immunity Statute (11 Del. C. § 3508) is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment, because only the State may apply thereunder for witness immunity.[2] The argument is wholly without merit as its application to this case demonstrates: For example, if A, ready and willing to "take the rap" on the charge brought against B, must be given immunity in order for the Court to have the "truth", the result is that neither is required to answer for the offense. To state the result is to demonstrate the obvious unacceptability of the premise. See Elam v. State, 50 Wis. 2d 383, 184 N.W.2d 176 (1971); In re K., 14 Cal.App.3d 94, 92 Cal.Rptr. 39 (1970); People v. Traylor, 23 Cal.App.3d 323, 100 Cal.Rptr. 116 (1972).

■ The defendant also contends that the State was obliged under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963) to interview Patricia Browning; that by not doing so, the State has intentionally caused the exclusion of evidence which could exculpate the defendant. This argument must fall with the former.

The State was not responsible for Patricia Browning's failure to testify. The

1. It appears that Patricia Browning informed the Public Defender representing the defendant that she wished to serve justice by admitting her guilt and exonerating the defendant; that the Public Defender advised her to see separate counsel; that, upon the advice of counsel, Patricia Browning then offered to be interviewed by the Attorney General and to testify, as to her own guilt and the defendant's innocence, but only upon the condition that she be granted immunity.

2. For legislative discretion in this area, see 8 Wigmore, Evidence, § 2281, pp. 490–508; Anno. 13 A.L.R.2d 1439; 21 Am.Jur.2d "Criminal Law", § 150.

witness herelf was the impediment. Refusal to give a witness immunity does not translate into suppression of evidence. Patricia Browning's silence was self-imposed, presumably for Fifth Amendment purposes; it may not be used by the defendant as a wedge for a *Brady*-style argument in his own case. The cases cited by the defendant in this connection are inapposite; they involved situations wherein the State deliberately suppressed favorable evidence or deliberately allowed false evidence to be admitted. See United States ex rel. Almeida v. Baldi, 3d Cir., 195 F.2d 815 (1952); Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

Affirmed.