Elwood **CANTY**, Defendant, Appellant,

v.

**STATE** of Delaware, Plaintiff, Appellee.

Supreme Court of Delaware.

Submitted Sept. 11, 1978.

Decided Oct. 10, 1978.

---

Robert C. Wolhar, Jr., of Wolhar & Moore, Georgetown, for defendant-appellant.

Norman A. Barron, Deputy Atty. Gen., Wilmington, for plaintiff-appellee.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

DUFFY, Justice.

Defendant was convicted by a Superior Court jury of murder in the second degree, 11 *Del.C.* § 635, and possession of a deadly weapon during the commission of a felony, 11 *Del.C.* § 1447. He appeals from the sentence imposed for each conviction. We affirm.

## I

Lulu Marie Wise was found dead in a house occupied by defendant's mother. She died from "massive internal and external bleeding due to a stab wound of the left chest with perforation of the left lung and heart."

At the critical time of the events leading to Ms. Wise's death, she was alone with defendant in the dining room. Three other persons, including defendant's sister, were in the living room. Defendant and the victim were quarreling. Defendant testified that the victim threatened to kill him and two of the other persons in the house. He said that the victim swung a knife at him, they struggled and "fell up against the refrigerator," the knife then dropped to the floor and he picked it up and placed it on the table. The victim fell to the floor, he called to her and, when she did not respond, he ran into the living room and said, "I think I just killed Marie." Defendant then asked for his coat and left the house.[1] Four days later he surrendered to the police.

## II

As we understand the record, defendant relied at trial on justification (self-defense) for his defense. The Court instructed the jury on that defense, see 11 *Del.C.* § 464, and error in such charge is not asserted here. Rather, the appeal is grounded on two contentions:

(a) That the Trial Court incorrectly and prejudicially instructed the jury on the definition of "possession" for the weapon offense; and

(b) that the Trial Court erred by failing to instruct *sua sponte* on justification and use of force for the protection of other persons.

The basis for defendant's appeal from the weapon conviction is our decision in *Mack v. State,* Del.Supr., 312 A.2d 319 (1973). There, we held that a felon was in "possession" of a deadly weapon, for the purpose of 11 *Del.C.* § 468A (now 11 *Del.C.* § 1447), only when the weapon was "physically available or accessible to him during the commission of the crime." 312 *A.*2d at 322.

Defendant contends that the Trial Court failed to limit its instruction on "possession" to the *Mack* definition.[2] We disa-

---

1. This statement of the facts does not attempt *to summarize* the sufficiency of the evidence to support the convictions, since that it not an issue on appeal.

2. The Trial Judge instructed as follows on the weapon charge:
   "In order to find the defendant guilty of Possession of a Deadly Weapon During the

gree. Not only did the Trial Court give an instruction which adequately adheres to the *Mack* limitations, to which an exception was not taken at trial, but the record unquestionably shows that the weapon was physically available and accessible to defendant when the killing occurred. The question of whether defendant actually possessed the weapon during the homicide was resolved against him by the jury verdict, which is amply supported by the evidence.[3] See *Mackie v. State,* Del.Supr., 384 A.2d 625 (1978).

Defendant's appeal from the conviction for murder in the second degree is also without merit. He now says that the Trial Court should have instructed the jury that the use of force to protect a third person is justifiable, see 11 *Del.C.* § 465, under the circumstances of this case. He contends that his struggle with the victim resulted from his effort to protect other persons who were in the living room and whom the victim had threatened.

■ A request for an instruction on defense of others was not made before the charge was given, nor was an objection made thereafter. The Trial Judge's failure to instruct *sua sponte* on that concept was not plain nor reversible error, cf. *Hand v. State,* Del.Supr., 354 A.2d 140 (1976), in the absence of significant evidence that, at the time of the killing, other persons were in imminent danger of harm at the hands of the victim, and that deadly force was necessary to protect them. We think that the case was tried on a self-defense issue (not on a defense-of-a-third-person issue) and

that it was fairly put to the jury on that basis.

Affirmed.

Commission of a Felony, you must find that the following four elements have been established beyond a reasonable doubt: First, there was a deadly weapon, namely a knife. The definition of a deadly weapon in the Criminal Code includes any sort of knife, other than an ordinary pocketknife, carried in a closed position. Second, the defendant possessed the deadly weapon. Possession generally means dominion, control and authority. *A person is in possession of a deadly weapon, within the meaning of this section, when it is accessible to him during the* commission of a crime. Third, the defendant acted knowingly. In other words, he was aware that he possessed the deadly weapon.

And, fourth, the defendant possessed the deadly weapon during the commission of the felony charged in Count 1 of the Indictment, namely Murder in the First Degree, or a lesser included felony, such as Murder in the Second Degree, Manslaughter, or Criminally Negligent Homicide." (Emphasis added.)

3. The murder indictment charged defendant with intentionally causing the death of the victim "by stabbing . . . with a knife." Since the jury convicted him of that offense, it implicitly found that death resulted from the stabbing by the knife which is the subject of the separate weapon charge.